# Baxter Spray Device Evaluation Agreement

This Baxter Device Evaluation Agreement (this "Agreement") is dated this _____ day of _____, 201_ and made effective as of the date of delivery of the Device (as defined herein), by and between Baxter Healthcare Corporation, through its Bioscience business unit, with offices at One Baxter Parkway, Deerfield, IL 60015 ("Baxter") and _____, with offices at _____ ("Customer").

1. **Delivery and Installation of Device**. Baxter will deliver at its own expense the biosurgical applicator devices of the type and quantity set forth in Schedule A (the "Device") to Customer. Baxter will install the Device according to Baxter's operating specifications.

2. **In-service Training, Supplies, and Support**. In consideration of Customer evaluating the Device, Baxter will use commercially reasonable efforts to provide Customer appropriate and timely in-service training. This shall constitute the training Baxter customarily provides to persons or entities buying such Devices. Baxter and Customer shall schedule such in-service training to occur as soon as reasonably practicable after the Device is delivered to Customer. Further, Customer is responsible for any and all Device supplies (e.g., spray sets, biologics, etc.) and must purchase said supplies from Baxter and arrange to receive appropriate supplies shipment prior to the Device evaluation.

3. **Use of Device and Evaluation Period**. Customer shall possess the Device for up to (60) days from date of delivery (the "Evaluation Period") at no rental fee, for the sole purpose of evaluating the Device for all currently approved indications to determine whether Customer wants to purchase such Devices from Baxter. Additionally, during the Evaluation Period, Baxter will provide telephone and on-site technical support and repair for the Devices at no charge, to the extent consistent with Baxter's customary practice for evaluation Devices.

4. **Customer's Obligations during Evaluation**. During the Evaluation Period, Customer shall establish a training schedule of Customer's users in order to ensure its staff is appropriately trained. Customer shall assign "Key Users" who will receive training from Baxter as part of the in-service training, the intent being that such Key Users will be able to answer staff questions after the initial in-service training. During the Evaluation Period, Customer shall properly maintain the Device in accordance with Baxter's operator's manual, and shall promptly notify Baxter if the Device may need repair or if it is not functioning in accordance with specifications in the operating manual. Further, Customer will identify with their Baxter representative, what constitutes a successful evaluation of the Device.

5. **Warranty and Liability Limits**. THE DEVICE PROVIDED HEREUNDER IS PROVIDED ON AN "AS-IS", "WHEREAS" BASIS AND BAXTER MAKES NO WARRANTIES EXPRESSED OR IMPLIED AS TO THE DEVICE. BAXTER SHALL HAVE NO LIABILITY WHATSOEVER ARISING FROM THE RIGHTS AND OBLIGATIONS CREATED HEREUNDER INCLUDING WITHOUT LIMITATION FOR LOSS OF BUSINESS, LOST PROFITS, OR OTHER PROXIMATE, INCIDENTAL, INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHATSOEVER, NOR SHALL BAXTER BE LIABLE FOR ANY DEMAND, ACTION, CLAIM, LOSS COST, DAMAGE, OR EXPENSE THAT MAY BE ALLEGED AGAINST THE CUSTOMER ARISING OUT OF PROPERTY DAMAGE, LOSS OF LIFE, BODILY INJURY, OR LOSS OF DATA, UNLESS, AND ONLY TO THE EXTENT THAT, IT IS DIRECTLY AND PROXIMATELY CAUSED BY THE NEGLIGENCE OF BAXTER (AS DETERMINED BY AN ADJUDICATION OF A COURT OF COMPETENT JURISDICTION OR A WRITTEN ADMISSION BY BAXTER) IN PERFORMING BAXTER'S OBLIGATIONS HEREIN.

6. **Waiver; Indemnification**. All claims of liability against either party not brought within one year from the date of delivery of the first evaluation Device shall be forever barred. Customer agrees to indemnify, defend and hold harmless Baxter, its successors and assigns from and against any claims or causes of action arising directly or indirectly from the rights and obligations created hereunder.

EXHIBIT A

7. **End of Evaluation Period**. At the end of the Evaluation Period, if Customer has not met the disposable purchase requirements for obtaining a spray device as set forth in customer's BioSurgery purchasing agreement, Baxter will contact Customer to coordinate the return of the Device. Customer may store the Device outside of the operating room until such time its purchasing requirements are met, but in no event shall this time period be longer than twenty (20) business days ("Interim Period") after the end of the Evaluation Period. If the Device is not returned to Baxter by the end of the Interim Period, Customer will be invoiced for and agrees to pay the fair market value for the Device, subject to Baxter's standard terms and conditions. During such Interim Period, all risk of loss shall be borne by Customer, and Baxter shall have the option to enter Customer's premises, upon prior notice, to ensure the Device is not being utilized. At the end of the Evaluation Period, if Customer has met or elects to meet its disposable purchase requirements for obtaining a spray device as set forth in customer's BioSurgery purchasing agreement, Customer will take ownership of the Device and Baxter will provide additional in-service training as needed upon request.

8. **Discounts**. Customer and Baxter intend that this Agreement shall be administered in accordance with the provisions of the federal Anti-Kickback Statute (42, U.S.C. § 1320a-7b(b)). To the extent that any discounts or other reductions in price are issued by Baxter and received by Customer with respect to the Devices under this Agreement, such discounts and/or reductions in price may be considered "discounts or other reductions in price" under the Anti-Kickback Statute, Section 1128B(b)(3)(A) of the Social Security Act [42 U.S.C. § 1320a-7b(b)(3)(A)]. To the extent required by the Anti-Kickback Statute or the Discount Safe Harbor regulations, 42 C.F.R § 1001.952(h) et seq., Customer shall fully and accurately disclose such discounts and other reductions in price in accordance with the applicable state or federal cost reporting requirements, including, without limitation, disclosing and accurately reflecting where appropriate, and as appropriate, to the applicable reimbursement methodology.

9. **Reporting**. Nothing herein shall preclude either party from reporting (including, but not limited to, the right to post on a website accessible to the public) information regarding compensation, gifts, payments, meals, education and other remuneration or things of benefit provided by Baxter pursuant to this Agreement, if such party determines in good faith that such disclosure is required by federal or state laws and/or other applicable rules or regulations.

10, **Termination**. Either Party to this Agreement may cancel this Agreement at any time without cause upon thirty (30) days prior written notice to the other Party at the addresses noted in this Agreement.

11, **Assignment**. Customer shall not (by operation of law or otherwise) assign or transfer its rights or delegate its performance under this Agreement without the prior written consent of Baxter, and any such assignment, transfer or delegation without such consent shall be void and of no force or effect. Subject to the preceding sentence, this Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and assigns.

12. **Laws**. Each party shall comply with all federal, state and local laws, ordinances, codes, rules and regulations that in any way affect the party's performance of this Agreement.

CUSTOMER:                      BAXTER:

_____PO#_____ Baxter Healthcare Corporation

By:_____          By:_____

Title:_____       Title:_____

## SCHEDULE A – Evaluation Devices

| Devices | Quantity |
|---|---|
| DuploSpray Regulator – Baxter product code #0600032 | |
| DuploSpray MIS Roll Stand – Baxter product code #0600040 | |
| EasySpray Pressure Regulator – Baxter product code #0600012 | |